## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **KEITH M. JOHNSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil No. 3:14-CV-00613** |
| | ) | **Judge Aleta A. Trauger** |
| | ) | |
| **METROPOLITAN GOVERNMENT** | ) | |
| **OF NASHVILLE AND DAVIDSON** | ) | |
| **COUNTY, TENNESSEE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## CORRECTED MEMORANDUM

Defendant Metropolitan Government of Nashville and Davidson County, Tennessee ("Metro") has filed a Motion for Summary Judgment (Docket No. 19), to which plaintiff Keith M. Johnson ("Johnson") has filed a Response in opposition (Docket No. 23), and Metro has filed a Reply (Docket No. 25). For the following reasons, the motion will be granted.

## FACTS AND PROCEDURAL BACKGROUND

This case involves alleged discrimination on the basis of race.[1] Johnson is an African-American resident of Davidson County, Tennessee. Metro is a political subdivision of the State of Tennessee. Johnson has been employed by the Metro Police Department ("Metro Police") since 2002. He currently serves at the rank of patrol sergeant.

---

[1] Only facts relevant to Johnson's specific claims and resolution of the motion for summary judgment are discussed herein. As discussed below, the facts of this matter relevant to the motion for summary judgment are essentially undisputed. The court notes that Johnson's Response brief contains discussion of facts, some of which may be disputed, that are not relevant to the claims before the court.

On July 24, 2011, Johnson was riding his motorcycle while off duty and was nearly struck by a pickup truck that swerved across several lanes. Johnson contacted Metro Police to report the incident; he wanted to prosecute the driver of the truck. An officer responded to the scene and wrote a report for prosecution purposes. However, a Caucasian field supervisor, Captain Walburn ("Walburn"), arrived and advised Johnson that he would not be allowed to prosecute. Walburn instructed the officer to change the report to reflect that Johnson would not be prosecuting.

On August 9, 2011, Walburn filed a report against Johnson with the Office of Professional Accountability ("OPA"). The report stated that Johnson had argued with the driver and followed the driver to his residence. The report accused Johnson of "a possible road rage incident." Johnson requested an attorney. The next day, Johnson was randomly selected to take a drug test, which he passed. An investigation into Walburn's report against Johnson ensued. The charge against Johnson was "not sustained."

Johnson instructed the sergeant who took his OPA interview that he wanted to file a complaint against Walburn. On October 12, 2011, Johnson was notified that his complaint against Walburn had been received and an investigation had commenced. In December 2012, Johnson was notified that the OPA investigation was concluded and that the charge against Walburn was "not sustained." Johnson's complaint was not resolved until after Walburn's probationary period as a captain was complete. OPA investigations normally take forty-five days according to department policy.

The Amended Complaint also makes allegations regarding the lieutenant promotion process offered to existing sergeants. The Metro Police lieutenant promotion process involves

two steps: (1) a written test, followed several months later by (2) live scenarios designed to test supervisory skills. After registering for the written test, Johnson received an email from Metro Police Human Resources advising him that he was disqualified for not completing the "About Me" personal information profile. In the past five years, two Caucasian officers did not complete the profile but were allowed to complete the test (i.e., were not "disqualified").[2] Neither of those other two officers was eventually promoted. Johnson appealed his disqualification to Human Resources on July 16, 2012, and he received an acknowledgment the next day. On September 11, 2012, Johnson received a telephone call from Human Resources advising him that he was qualified to participate in the lieutenant promotion process. The assessment test date was September 13, 2012. Johnson had two days to prepare, while other sergeants applying for lieutenant had been preparing for a longer period of time. Johnson took the assessment test and his score ranked him thirty-eight out of forty-three. The top eight of forty-three candidates were offered a promotion; all of them were Caucasian. Johnson underwent the lieutenant promotion process again in 2013 without complaint. His results placed him fiftieth out of fifty-five, and he was not offered a promotion.

Johnson filed a Complaint on March 6, 2014 (Docket No. 1) and an Amended Complaint on April 17, 2014 (Docket No. 8). The Amended Complaint brings one count for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. On May 6, 2015, Metro filed the pending Motion for Summary Judgment. (Docket No. 19.) On June 2, 2015, Johnson filed his Response. (Docket No. 23.) On June 16, 2015, Metro filed its Reply. (Docket No. 25.)

_____

[2] While Johnson suggests there may have been others, he adduces no evidence of any and does not dispute Metro's evidence that the accurate number is two in the past five years.

In sum, the Amended Complaint alleges that Metro has discriminated against Johnson by treating him differently than his co-workers in the following ways:

a.    Not allowing Johnson, while off-duty, to prosecute another driver over a road incident in July 2011 (Docket No. 1 at ¶ 11);

b.    Making Johnson the subject of an OPA investigation following a complaint against Johnson filed by Walburn in August 2011 (*Id*. at ¶ 12);

c.    Selecting Johnson for a random drug test in August 2011 (*Id*. at ¶ 13);

d.    Interviewing Johnson, with his attorney, in the fall of 2011 as part of the OPA investigation into him (*Id*. at ¶ 14);

e.    Delaying the handling of Johnson's complaint about Walburn for fourteen months such that Johnson did not receive a response until December 2012 (*Id*. at ¶ 16); and

f.    Disqualifying Johnson from the lieutenant promotion process in July 2012; later qualifying Johnson for the process only two days before the examination; thereby forcing Johnson to take the test without sufficient preparation time; and not promoting Johnson as a result of his performance (*Id*. at ¶¶ 17-19).

## ANALYSIS

### I.    Legal Standard

Federal Rule of Civil Procedure 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the

plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson*, 477 U.S. 242, at 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d 374 (citing *Anderson*, 477 U.S. at 252).

## II.     Failure to Exhaust Administrative Remedies

A person seeking to bring a discrimination claim under Title VII in federal court must first exhaust his administrative remedies by including his claims in his Equal Opportunity Employment Commission ("EEOC") Charge of Discrimination ("Charge"). *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832 (1976). This requirement exists so that the EEOC will have an opportunity to convince the parties to enter into a voluntary settlement, which is the preferred means of disposing of such claims. *Handlon v. Rite Aid Servs.*, LLC, 513 F. App'x 523, 528 (6th Cir. 2013); *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006) (citing *Parsons v. Yellow Freight Sys., Inc.*, 741 F.2d 871, 873 (6th Cir. 1984)); *see also Dixon v.*

*Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004) ("The purpose of the requirement is to trigger an investigation, which gives notice to the alleged wrongdoer of its potential liability and enables the EEOC to initiate conciliation procedures in an attempt to avoid litigation."). While this requirement should not be "overly rigid" or result in the dismissal of complaints based on "the failure of the charges to contain the exact wording which might be required in a judicial pleading," *EEOC v. McCall Printing Co.*, 633 F.2d 1232, 1235 (6th Cir. 1980), it does *not* mean "that plaintiffs are excused from filing charges on a particular discrimination claim before suing in federal court." *Jones v. Sumser Retirement Village*, 209 F.3d 851, 853 (6th Cir. 2000) (citing *Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir. 1998)). Within the Sixth Circuit, the general rule is that "the judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Dixon*, 392 F.3d at 217 (quoting *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367 (6th Cir. 2002)); *see also Hawkins v. Ctr. for Spinal Surgery*, 34 F. Supp. 3d 822, 834 (M.D. Tenn. 2014) (observing that the facts alleged in the body of the EEOC charge dictate the breadth of the potential judicial complaint); *Bray v. Palm Beach Co.*, 1990 WL 92672, at *2 (6th Cir. June 29, 1990) (noting that "the facts alleged in the body of the EEOC charge, rather than merely the boxes that are marked on the charge, are the major determinants of the scope of the charge").

Metro argues that Johnson's first four claims, as discussed *supra* and contained in Amended Complaint ¶¶ 11-14, were not included within the scope of Johnson's EEOC Charge. In relevant part, Johnson's EEOC Charge reads: "I filed a complaint in regards to an incident that occurred in July 2011 and did not receive a response until December 2012. Furthermore, in July 2012 I took the test to be promoted to lieutenant but was told later that I was disqualified

from the promotion process. Two days prior to the test given in September 2012, I was told that I could take the test, however, I was not given the opportunity to study for it as other white sergeants were given." (Docket No. 21.) The only complaint ever filed by Johnson was against Walburn, and so the first sentence of the EEOC Charge relates directly to Johnson's fifth claim (Amended Complaint at ¶ 16). The remaining part of the EEOC Charge obviously relates to Johnson's sixth and final claim (Amended Complaint at ¶¶ 17-19). Nothing in the vague first sentence of this charge points to the facts of the first four claims (*e.g.*, not being allowed to prosecute the driver while off-duty, being the subject of a complaint for conduct unbecoming an officer, being selected for a random drug test, or being interviewed in connection with an investigation against him). Even under a liberal reading of the EEOC Charge, the court does not find an indication that Johnson made any effort to suggest to the EEOC that other incidents of racial discrimination occurred beyond the two discrete incidents set forth. As such, Johnson failed to give the EEOC the required opportunity to attempt to fully resolve all of his complaints with Metro at the administrative level. Because Johnson failed to fully exhaust his administrative remedies, summary judgment for Metro is appropriate as to the first four potential bases for relief set forth in the Amended Complaint.[3]

## III.   Statute of Limitations

Metro contends that Johnson's fifth basis for a discrimination claim – that Johnson did not receive a response to his complaint against Walburn until December 2012 – does not fall within the statutory claim accrual period.

---

[3] The court also notes that Johnson failed to respond to this point in his Response brief, thereby waiving opposition to Metro's argument in favor of dismissal based on failure to exhaust administrative remedies. (*See generally* Docket No. 23.)

Under Title VII, a claimant who wishes to bring a discrimination lawsuit must file an EEOC Charge within three hundred days of the alleged discrimination. *See* 42 U.S.C. § 2000e-5(e)(1). A discrimination claim accrues when the plaintiff learns of the alleged discrimination, not when he later experiences further consequences from it. Moreover, "absent equitable considerations, the statute of limitations begins running when a complainant has knowledge of the discriminatory conduct, not when the complainant discovers at some later point that the conduct infringes on a legal right. *Brown v. Packaging Corp. of Am., Inc*., 846 F.Supp. 592, 597 (M.D. Tenn. 1993) (citing *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984)); *Young v. Twp. of Green Oak*, 471 F.3d 674, 679 (6th Cir. 2006) (citing *Yinger v. City of Dearborn*, No. 96-2384, 1997 WL 735323 (6th Cir. Nov. 18, 1997) ("[A] discrimination claim accrues when the operative decision is made, not when [a plaintiff] experiences the consequences of that decision.")); *Chardon v. Fernandez*, 454 U.S. 6, 8-9 (1981) (observing that "the proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become painful"); *Delaware State Coll. v. Ricks*, 449 U.S. 250 (1980) (holding that filing limitation commenced when negative tenure decision made and communicated to employee); *Janikowski v. Bendix Corp.*, 823 F.2d 945, 947 (6th Cir. 1987) (cause of action accrued when employee received notice of termination, not when employment ceased); *see also Jones v. Sumser Retirement Village*, 209 F.3d 851, 853 (6th Cir. 2000) (distinguishing between the date of alleged failure to accommodate and the date of termination for purposes of the accrual of separate claims).

Johnson filed his EEOC Charge on March 21, 2013. (Docket No. 21.) In order for this charge to have been timely, Johnson must have known of the alleged discrimination against him

no more than three hundred days prior, or May 25, 2012. However, the discriminatory act of which Johnson complained in his EEOC Charge (and sues upon here) – namely, a delayed response to his complaint against Walburn – had occurred as soon as he knew Metro Police's response was delayed, not after fourteen months had passed and Johnson received an OPA report summarizing the resolution of his complaint. It is undisputed that Johnson filed his complaint with the OPA against Walburn "sometime between August and October 2011." Plaintiff's Response to Metro's Statement of Undisputed Facts ("RSUF") at No. 3. (Docket No. 24.) Complaints should be resolved by Metro Police within forty-five days. RSUF at No. 1. Johnson should, therefore, have expected Metro Police to resolve his complaint in the time window of September 15, 2011 to December 15, 2011. Thus, by December 15, 2011, Johnson was on notice that he did not receive a timely response to his complaint against Walburn, and this is when his three-hundred day accrual period began to run.

Moreover, despite, describing Metro's technical statute of limitations argument as "offhanded and weakly supported," Johnson appears to concede that his fifth claim *does* fall outside the accrual period. (*See generally* Docket No. 23 at pp. 11-13.) But Johnson argues for application of the continuing violation doctrine, whereby, because he has suffered a "pattern of discrimination," Johnson may file charges for all acts suffered, so long as the last related act occurred within the statutory period. *See Roberts v. N. Am. Rockwell Corp.*, 650 F.2d 823, 826-28 (6th Cir. 1981).

The Sixth Circuit has recognized two narrow situations that warrant application of the continuing violation theory: (1) an ongoing series of discriminatory acts related to a discriminatory decision (such as disparate work assignments), or (2) a long-standing policy of

discrimination. *Lyons v. Metro. Gov't of Nashville and Davidson Cnty.*, 416 F. App'x 483, 491 (6th Cir. 2011); *Sharpe v. Cureton*, 319 F.3d 259, 266-67 (6th Cir. 2003). However, "just because discrete claims are related to one another – in terms of the parties involved, the nature of the underlying conflict and the theory of relief – does not mean that the limitations period is suspended for all of the claims so long as just one of them occurred within the limitations period." *Lyons*, 416 F. App'x 490-91 (quoting *Baar v. Jefferson Cnty. Bd. of Educ.*, 311 F. App'x 817, 824 (6th Cir. 2009)).

Johnson has not alleged a "long and demonstrable policy of discrimination" in this case, nor are there facts present to support such a claim. *See Bowerman v. Int'l Union*, 646 F.3d 360, 366 (6th Cir. 2011); *Lyons*, 416 F. App'x at 491. As to an ongoing series of discriminatory acts related to a discriminatory decision, Johnson argues that the actions taken against him – as remaining here, the delayed response to the complaint against Walburn and unfair treatment in the lieutenant promotion process – should be considered continuing violations. The facts do not warrant this assertion. Each of these two incidents was a discrete act with discrete consequences. While broadly involving Metro Police, the incidents are unconnected temporally – Johnson filed his complaint against Walburn between August and October 2011, undertook the lieutenant testing process in September 2012, and the complaint against Walburn was resolved in December 2012. The incidents involved distinct Metro Police personnel (the OPA and human resources, respectively). Indeed, Johnson does not even allege communications between the personnel involved in each incident. The factual underpinnings of the incidents (Walburn's behavior, on the one hand, and Johnson's eligibility, study time, grade, and non-promotion, on the other hand) are unrelated. Finally, there was no barrier to Johnson's filing suit after the first

act occurred.  *Bowerman*, 646 F.3d at 366-67.  The fact alone that these discrete events may have had a continuing impact upon Johnson is not a sufficient basis upon which to apply the continuing violation doctrine.  *Lyons*, 416 F. App'x at 491.

Accordingly, the court finds that Johnson's claim of discrimination regarding the delayed response to his complaint against Walburn is time-barred because it falls outside the three-hundred day accrual period.

## IV.    Race Discrimination Claim Related to Lieutenant Promotion Process

Johnson's claim regarding the lieutenant promotion process is analyzed under the federal Title VII framework.  Where, as here, there is no allegation of direct evidence of discrimination, a claim of race discrimination is analyzed under the familiar burden-shifting analysis set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later refined in *Texas Dept. of Cnty. Affairs v. Burdine*, 450 U.S. 248 (1981).  Under the *McDonnell Douglas* framework, Johnson must first establish a *prima facie* case of discrimination.  To establish a *prima facie* case of race discrimination, Johnson must establish that he: 1) is a member of a protected class; 2) is qualified for the job; 3) suffered an adverse employment action; and 4) was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees.  *Saulsberry v. Fed. Exp. Corp.*, 552 F. App'x 424, 430 (6th Cir. 2014) (citing *Newman v. Fed. Exp. Corp.*, 266 F.3d 401 (6th Cir. 2001)).  Under Sixth Circuit law, to establish that he was treated differently than similarly-situated employees, Johnson must show that he and his proposed comparators were similar in all relevant respects, *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998), and that he and his proposed comparators engaged in acts of comparable seriousness.  *Wright v. Murray Guard, Inc.*, 455 F.3d

702, 710 (6th Cir. 2006) (citing *Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (6th Cir. 2002)).

If Johnson makes a *prima facie* showing, "the burden shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action." *Clay v. United Parcel Serv.*, 501 F.3d 695, 704 (6th Cir. 2007). To meet this burden, Metro must clearly set forth, through the introduction of admissible evidence, the reasons for its decision. *Id.*; *see also Berry v. City of Pontiac*, 269 F. App'x 545, 549 (6th Cir. 2008). If Metro is successful, the burden then "shifts back to the plaintiff to show that the defendant's proffered reason is a pretext for unlawful discrimination." *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007). To make this showing, Johnson retains the ultimate burden of producing "sufficient evidence from which the jury could reasonably reject [Metro's] explanation and infer that [Metro] intentionally discriminated against [him]." *Braithwaite v. Timken Co.*, 258 F.3d 488, 493-94 (6th Cir. 2001).

For purposes of the motion for summary judgment, the parties agree that Johnson has satisfied the first three elements of the *prima facie* case. Metro contends, however, that Johnson has not, and can not, make any showing that he was treated differently than any similarly-situated Caucasian employee. More specifically, Metro argues that Johnson cannot show the existence of any proposed comparators who did not initially complete their profiles properly (*i.e.*, were similarly-situated to Johnson) but were allowed to proceed and were promoted (*i.e.*, were treated differently than Johnson). Metro contends that the lack of any similarly-situated comparator who was treated more favorably than Johnson ends the *prima facie* case analysis.

The majority of Johnson's Response discusses his *prima facie* case as to claims upon which the court has ruled for separate reasons; Johnson's discussion of similarly-situated non-protected employees in relation to the lieutenant promotion process claim is extremely brief.

12

(*See* Docket No. 23 at p. 18.)  In two sentences, Johnson argues that, (1) while he had only two days to study for the test, many Caucasian sergeants (who were not temporarily disqualified) had much longer, and (2) all eight individuals eventually offered lieutenant positions by Metro Police in 2012 were Caucasian.  This, Johnson appears to suggest, is sufficient to establish that there were similar Metro Police employees treated differently than Johnson.

The court finds that Johnson has adduced no proof that Metro Police treated similarly situated employees outside of his protected class more favorably in terms of the lieutenant selection process.  To be specific, Johnson was disqualified from participating in the promotion process for a period of time after a delay in registration, due to a problem with completion of the "About Me" section of the registration form.  Johnson was eventually allowed to take the test, although he had less time to prepare; he was not promoted.  However, it is *undisputed* that "[t]he only two potential [C]aucasian comparators [in the past five years] were also not promoted." RSUF No. 6.  In short, the only two Caucasian lieutenant applicants who also failed to properly fill out the "About Me" section of the registration, but were allowed to proceed with the process (*i.e.*, not disqualified for a period of time similar to Johnson) were *not* promoted and were *not* treated differently than Johnson as a result of the process.  In other words, the only two comparators of record in this matter had the *same* results (*i.e.*, non-promotion) as Johnson.

Johnson's generalized grievances as to a sense of racial bias within Metro Police, or even the bare fact that the individuals who were actually promoted to lieutenant in 2012 may have all been Caucasian, cannot substitute for a required element of the *prima facie* case of race discrimination.  Johnson's claim is fundamentally grounded in the allegation that he was inappropriately disqualified and given less time to prepare.  However, Johnson has offered no

13

evidence to establish that, as a result, Metro Police treated Johnson differently than other similarly situated employees of another race. Accordingly, summary judgment for Metro is appropriate on Johnson's race discrimination claim based on the lieutenant promotion process.[4]

## CONCLUSION

Metro's Motion for Summary Judgment (Docket No. 19) will be granted.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

---

[4] The court notes that, beyond Johnson's failure to satisfy the elements of the *prima facie* discrimination case, Metro can articulate legitimate, non-discriminatory reasons for its decision not to promote Johnson. Specifically, in 2012, Johnson ranked thirty-eight out of forty-four on the promotion list after the testing process. RSUF No. 12. An argument by Johnson that this reason is pretext can be rebutted by the fact that, for 2013, Johnson, without any known problems regarding the testing process, ranked fiftieth out of fifty-five on the promotion list after the testing process. RSUF No. 13.